5-23-2012

Hon. Linda Reade
Chief Judge
Northeast Iowa District Court
4200 C St. SW
Cedar Rapids, IA 52404

Re: Request for 1 year extension

Dear Judge Reade:

    Attached is the case analysis of Sean Nelson, Iowa Civil Rights Commission and their cover letter dated 5-29-2012. I have also included their/my Administrative Release and Letter of Right-To-Sue. It seems that the ICRC's solution is that I hire an attorney.

    As a retired civil servant (corrections probation officer), it was my intent to represent myself and my community to what I see as a logical resolution. I would like to see the restoration of the historical access, 50+ years, to Coldwater Spring. That resolution would be a simple, inexpensive footbridge and encouraging the Dept. of Natural Resources to create a neighborly advisory group for the Coldwater Creek Recreation Area.

    Last week, with the assistance of a young friend, I tried to cross the existing rock ford. He twisted his ankle on the far bank and cautioned me not to follow.

    I may have made some mistakes in how I have represented myself as I am not an attorney. In order to continue to what I might consider a good conclusion for myself and my neighborhood I need more than 90 days. It is with this letter that I am requesting a one year extension.

    I have continued this pursuit via telephone to the Iowa DNR, Iowa Civil Rights Commission and Clerk of Court Offices in Northeast Iowa. The phone calls have not been helpful and always have gone unreturned.

    I appreciate your consideration.

Sincerely,

David Reis
3342 Chimney Rock Road
Decorah, IA 52101

Encl.

# Administrative Release
## (Letter of Right-To-Sue)

| To:<br><br>MR. DAVID REIS<br>3342 CHIMNEY ROCK RD<br>DECORAH, IA 52101 | ) From:<br>)<br>) Iowa Civil Rights Commission<br>) Grimes State Office Building<br>) 400 E. 14th Street<br>) Des Moines, Iowa 50319 |
|---|---|
| Complaint CP# 02-12-62124 | |

This is your Administrative Release (Right-To-Sue) Letter issued pursuant to Iowa Code Section 216.16 and 161 Iowa Administrative Code Section 3.10. It is issued pursuant to the Complainant's request.

The following conditions have been met:

1. The complaint was timely filed with the Iowa Civil Rights Commission (ICRC) as provided in Iowa Code Section 216.15(12);

2. Sixty (60) days have expired since the complaint was filed with ICRC;

3. None of the exceptions set forth in Administrative Rule 161 – 3.10(4) are applicable.

With this Administrative Release, the Complainant has the right to commence an action in state district court. That action must be commenced within ninety (90) days of the issue date 6/29/2012. *The Right-to-Sue Letter is not a finding by ICRC on the merits of the charge. ICRC will take no further actions in this matter.*

A copy of this Administrative Release/Letter of Right-To-Sue has been sent to the Respondent(s) and counsel(s) as shown below. The Code allows any party to obtain a complete copy of the case file after a Right-To-Sue has been issued. Requests for copies should be directed to Marcia Coverdale at ICRC.

The Iowa Civil Rights Commission
Phone: (515) 281-4121
FAX: (515) 242-5840

cc: File

    DEPARTMENT OF NATURAL RESOURCES, LAND MANAGEMENT
    DEPARTMENT OF NATURAL RESOURCES
    WINNSHIEK COUNTY DEPARTMENT OF NATURAL RESOURCES

ICRC/S36 (24)



**STATE OF IOWA**

TERRY BRANSTAD, GOVERNOR
KIM REYNOLDS, LT. GOVERNOR

IOWA CIVIL RIGHTS COMMISSION
BETH TOWNSEND
EXECUTIVE DIRECTOR

5/29/2012

MR. DAVID REIS
3342 CHIMNEY ROCK RD
DECORAH, IA 52101

RE: DEPARTMENT OF NATURAL RESOURCES, LAND MANAGEMENT
CP# 02-12-62124

Dear MR. DAVID REIS:

Your complaint has been <u>administratively closed</u>. Enclosed is the "Screening Data Analysis and Case Determination." Determinations at this stage are based primarily on paper filings and documentation provided to the Commission and should not be considered as a form of fact-finding.

At this time, you have the following options:

1. You may request the Iowa Civil Rights Commission (ICRC) to reconsider this determination. Your request must be in writing and must be made within thirty (30) days from the date of this letter. Your request should state why reopening should be granted. Any new information or documents supporting your allegations of discrimination should be submitted along with your request for reopening and reconsideration. ICRC will send a copy of your request for reconsideration to the Respondent. Respondent will then be given an opportunity to submit a response to your request. In your written request for reconsideration, please state the CP#.

   Your request may be delivered to ICRC offices within 30 days from the date of this letter by one of the following methods:
   A. Mail – it must be postmarked no later than the 30th day.
   B. FAX – it must be received by ICRC no later than 4:30 pm on the 30th day.
   C. Delivered personally (hand-delivered) to ICRC offices – it must be received by ICRC no later than 4:30 pm on the 30th day.

   Note: If the 30th day falls on a weekend or a federal or state holiday, the 30-day period is extended to ICRC's next regular business day.

2. You may request a "Right-to-Sue" letter. Please read the enclosed Information Sheet regarding "Right-to-Sue" letters. We suggest consulting an attorney before you choose this option. You may wish to contact the Iowa Bar Association's Lawyer Referral Service at www.iabar.net

   A. Your written request for a "Right-to-Sue" letter must be made within two years of the date of this letter.
   B. Once ICRC issues the Right-to-Sue, you have ninety (90) days from the date on the "Right-to-Sue" letter to initiate or file a lawsuit against the Respondent in District Court.
   C. Both parties have the right to request a copy of ICRC's case file after the "Right-to-Sue" letter has been issued. Please be aware there is a charge for the copying.

   Note: In your written request for a "Right-to-Sue" letter, please state the CP#.

If you have any questions, please contact our office. Thank you.

Iowa Civil Rights Commission

Enclosures: Screening Data Analysis and Case Determination and RTS Information Sheet
CC: File

Grimes State Office Building, 400 E. 14th Street, Des Moines, Iowa 50319-1004
515 281-4121 / 1-800-457-4416 / Fax 515-242-5840
http://www.state.ia.us/government/crc

# SCREENING DATA ANALYSIS
# AND
# CASE DETERMINATION

CP# 02-12-62124

Area: Public Accommodations        Bas(es): Disability

Complainant: Mr. David S. Reis

Respondent(s): Department of Natural Resources, Land Management, Department of Natural Resources, Winneshiek County Department of Natural Resources

Complainant's allegations:
Complainant contends he was denied access to the headwaters and spring of Coldwater Creek because he is disabled. Complainant claims he has spinal stenosis and arthritis. Complainant alleges his conditions affect his balance and require him to use a cane when he walks.

Complainant claims he has been camping, bird watching, fishing and hiking in Coldwater Cave for over fifty years. In 1993, Complainant alleges a flood destroyed a steel bridge that had provided access for many years. Complainant claims Respondent replaced the steel bridge with a small foot bridge that provided access until 2008. In 2008, a flood destroyed the second bridge and Respondent has not replaced it. Complainant claims Respondent placed some shaky rocks in the stream to replace the bridge. Complainant alleges this replacement denies access to everyone but extremely athletic visitors. As a result, Complainant alleges Respondent has denied him access to the headwaters of Coldwater Creek and a large spring that exits Coldwater Cave. Complainant contends Respondent must provide access to Coldwater Cave because it is a designated national natural landmark.

Respondent's reasons:
Respondent contends its grounds are primarily kept for wildlife management and are not preserved for public use. Respondent concedes there was a pedestrian bridge in the Coldwater Creek Wildlife Management Area until 2008. A flood removed the bridge in 2008. It claims the bridge had previously been a vehicular bridge but when it became unsafe for vehicular traffic in the 1960s, Respondent limited it to pedestrian use. Respondent made a decision not to replace the bridge when it was removed by the flood and put stepping stones in the water to allow for wading and a fish habitat. Respondent contends rebuilding the bridge would endanger federal grant agreements it has entered into. The agreements prohibit any activity that interferes with

1

the primary purpose of "manag[ing] the fish and wildlife-oriented resources in the state."[1] Respondent claims the trails that currently exist were created in a bygone era before Respondent acquired the property. Respondent provides a letter from the Department of the Interior resisting the creation of horse-based recreation and trails to support its claims.[2]

Respondent contends Complainant's complaint is misplaced because he still has access to the headwaters of Coldwater Creek. It states there is a second parking lot and road access is available to users from the north side of the creek. Respondent has attached a map detailing the areas Complainant could have used to gain access in this way.[3] Respondent claims it has a program where a person with a disability may use a motorized vehicle to access places within a wildlife management area.[4] Respondent contends Complainant could have gained access to the headwaters of Coldwater Creek using an all terrain vehicle under this rule. Respondent contends Complainant was provided with information about these alternative modes of gaining access in the spring of 2011.

Analysis:
Complainant claims he was discriminated against because of disability in the area of public accommodations. Complainant's claims are evaluated based on the information collected to date by the Iowa Civil Rights Commission (ICRC). A case will be screened in for further investigation if the information collected to date "indicates a reasonable possibility of a probable cause determination."[5] When evaluating evidence, we draw all reasonable inferences from the evidence in favor of the Complainant. An inference is legitimate if it is "rational, reasonable, and otherwise permissible under the governing substantive law."[6] Additionally, we do not make credibility determinations at this stage. Instead, we focus on whether the material facts collected indicate a reasonable possibility of a probable cause determination. We are mindful that "discrimination cases frequently turn on inferences rather than direct evidence" and that direct evidence of intent is often difficult or impossible to obtain.[7]

In order to form a prima facie case of discrimination in public accommodation Complainant must show:

---

[1] *See* Respondent's Exhibit "D", Letter from the Department of the Interior.
[2] *See* Respondent's Exhibit "D".
[3] *See* Respondent's Exhibit "E".
[4] 571 Iowa Administrative Code §51.8(2).
[5] ICRC Rule 161-3.12(1)(f).
[6] *Manning v. Wells Fargo Financial, Inc.* 756 NW2d 480 (Iowa App.,2008) citing *Butler v. Hoover Nature Trail, Inc.*, 530 N.W.2d 85, 88 (Iowa Ct.App.1994).
[7] *See Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir.2005); *Haas v. Kelly Services, Inc.*, 409 F.3d 1030, 1034-35 (8th Cir.2005).

2

1. He is a member of a protected class;
2. He sought to enjoy the accommodations of the public accommodation; and
3. He did not enjoy the accommodations because of discrimination.
   There are two ways of proving this element:
   a. He was refused or denied the accommodations while similarly situated persons outside the protected class were not deprived of those services, or
   b. He was allowed to use them but was otherwise subjected to markedly hostile conduct.[8]

First, Complainant must prove he is a member of a protected class. Complainant can show he was a disabled individual by proving he had an actual disability. The ADAAA uses three different levels of analysis for determining whether or not the Complainant is an "individual with a disability" as defined in the Act. The first level of analysis evaluates whether the individual had an "impairment." Once Complainant has proven that he was impaired that impairment must affect a "major life activity" to fall within the protection of the ADAAA. Finally, Complainant must prove that the effect, "rise[s] to a substantial limitation."[9] The analysis on this element centers on if the disabled individual is substantially limited relative to "most people in the general population."[10]

Complainant contends he has spinal stenosis and arthritis. These conditions would fall within the definition of physical impairments under the ADAAA.[11] Complainant contends he has difficulty walking or standing without a cane. Standing is a "major life activity" under the ADAAA.[12] Walking is considered a "major life activity" by the Eighth Circuit.[13] Complainant can show his impairment affects two major life activities. Most people in the general population walk and stand without any effort or consideration. Complainant can satisfy this element of his prima facie case.

Second, Complainant must prove he sought to enjoy the accommodations of a public accommodation. The term public accommodation under the ICRA "includes state and local government units . . . that offer services, facilities, benefits, grants or goods to the public, gratuitously or otherwise."[14]

---

[8] *Kirt v. Fashion Bug #3253*, 479 F. Supp. 2d 938, 959 (N.D. Iowa 2007).
[9] 29 C.F.R. §1630(g)(1)(2005).
[10] 29 C.F.R. 1630(j)(i-ii) 2008.
[11] 29 C.F.R. §1630(h)(1)(2005).
[12] Helfter v. United Parcel Servs., Inc., 115 F.3d 613, 616 (8th Cir. 1997); Bragdon v. Abbott, 524 U.S. 624, 638 (1998).
[13] Gretillat v. Care Initiatives, 414 F.Supp.2d 901, 910 (N.D. Iowa).
[14] Iowa Code § 216.2(13)(b).

3

Complainant contends Respondent is a public accommodation because it provides hunting and fishing on its grounds. Respondent does not deny it grants access to the public. Complainant can satisfy this element of his prima facie case.

Third, Complainant must prove he did not enjoy the accommodations because of discrimination. Complainant can prove this element in two different ways. He can fulfill this element by showing he was refused or denied the accommodations while similarly situated persons outside the protected class were not deprived of those services. He can fulfill this element by showing he was allowed to use them but was otherwise subjected to markedly hostile conduct. Here, Complainant is attempting to use both modes of proof. The two modes of proof will be analyzed in the order listed above.

First, Complainant claims he was denied access to the headwaters of the Coldwater Creek and that more athletic individuals could gain access by using stepping stones placed in the creek bed. However, Respondent counters showing two alternative modes of access existed Complainant could have used. One way of accessing the area would have been to simply park in the northern parking lot and take a different access road. Another means of accessing the area is given exclusively to people with disabilities. Complainant could have used an all terrain vehicle to cross the Wildlife Management Area.[15] As a result, it is unlikely Complainant can show he was denied access when similarly situated individuals were granted access.

Second, Complainant claims he was treated in a rude manner that made the enjoyment of the public accommodation impossible. However, Complainant needs to show more than rude behavior to satisfy this element in this way. In a business setting, "'markedly hostile' conduct means conduct that '(1) is so profoundly contrary to the manifest financial interests of the merchant and/or its employees; (2) so far outside of widely accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination.'"[16]

Complainant does not specify how Respondent's agents treated him in a rude way. Respondent claims it told Complainant about alternative ways of gaining access to the headwaters of Coldwater Creek in the spring of 2011. Based on the information collected to date, Complainant does not appear to be able to fulfill this element of his prima facie case. As a result, Complainant's public accommodations claim does not merit further investigation.

---

[15] 571 Iowa Administrative Code §51.8(2).
[16] *Kirt v. Fashion Bug #3253*, 479 F. Supp. 2d 938, 966 quoting *Callwood v. Dave & Buster's, Inc.*, 98 F.Supp. 2d 698, 708 (D. Md. 2000).

4

*Title II of the Americans with Disabilities Act (ADA)*
Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied benefits of the services, programs, or activities of a public entity or be subjected to discrimination by that entity."[17] A public entity is defined as "any state or local government."[18]

> "A public entity *shall* make reasonable modifications in policies, practices or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity."[19]

In order to form a prima facie case under the Title II of the ADA, Complainant must show:

> 1. He is a person with a disability as defined by the ADA; and
> 2. He was otherwise qualified for the benefit in question; and
> 3. He was excluded from the benefit due to discrimination based upon disability.[20]

First, Complainant must prove he is a person with a disability as defined by the ADA. Based on the analysis above, Complainant is a person with a disability under Title II.

Second, Complainant must show he was otherwise qualified for the benefit in question. A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies or practices, the removal of architectural, communication or transportation barriers . . . meets he essential eligibility requirements for the receipt of services of participation in programs or activities provided by a public entity."[21] Regulations promulgated by the Attorney General define what modifications are reasonable. A public entity does not need to make modifications to the extent they would "fundamentally alter the nature of the service, program or activity."[22]

Here, Respondent contends the modification would "fundamentally alter the nature of the service, program or activity."[23] Respondent alleges its mission is

---

[17] 42 U.S.C. § 12132.
[18] 42 U.S.C. § 12131(1)A.
[19] 28 C.F.R. § 35.130(b)7.
[20] Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999).
[21] 42 U.S.C. § 12132(2).
[22] 28 C.F.R. § 35.130(b)7.
[23] 28 C.F.R. § 35.130(b)7.

5

Case 6:12-cv-02068-LRR   Document 1   Filed 09/27/12   Page 8 of 11

to manage the fish and wildlife-oriented resources of the state.[24] It contends that adding a bridge or trails interferes with that service because it has negative impacts on hunting and to the wildlife habitat. It provides a letter from the Department of the Interior supporting its argument. Respondent's argument is convincing because the Department of the Interior was concerned with something far less invasive.[25] As a result, it is unlikely Complainant can fulfill this element of his prima facie case.

Third, Complainant must show he was excluded from the benefit due to discrimination based upon his disability. Respondent contends Complainant has excluded himself by failing to use other means of accessing the headwaters of Coldwater Creek. It contends it has supplied him with an access road and it has provided a way of reaching the headwaters of Coldwater Creek by using an all terrain vehicle. Respondent's argument is convincing. Where there is more than one way to accommodate Complainant, Respondent, "providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide."[26] Complainant has provided no reason why Respondent's alternative modes of access are insufficient ways of accommodating him. As a result, it is unlikely Complainant can fulfill this element of his prima facie case.

Respondent has an affirmative defense if it can demonstrate the accommodation would constitute an undue burden.[27] Generally, determining whether an accommodation constitutes an undue burden is a fact intensive inquiry.

Here, Respondent contends Complainant's accommodation would be an additional cost during an austere state budgetary year. Respondent asserts the construction of the bridge might threaten its ability to get funding through federal grant programs as well. Respondent receives $ 11.6 million annually from the federal government. In light of less costly alternatives, Complainant's accommodation appears to be an undue burden and would be presumptively unreasonable. As a result, Complainant's Title II claim does not merit further investigation.

Determination:
Pursuant to Iowa Code § 216.16(6) and Iowa Civil Rights Commission Rule 161-3.12, this case has been preliminarily screened and it has been determined that the following action will be taken:

---

[24] See 50 C.F.R. 80.3 & 80.4.
[25] The DOI opposed introducing horseback riding to the area.
[26] Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1137 (8th Cir. 1999).
[27] Gordan v. Bartch, 152 F.3d 907,

6

## ADMINISTRATIVE CLOSURE

Iowa Civil Rights Commission Rule 161-3.12(1)(f) provides the *standard* for screening. A case will be screened in when further processing is warranted. Further processing is warranted when the collected information indicates a reasonable possibility of a probable cause determination.

Based on a review of the information provided by the parties as outlined above, it is determined that this complaint does not warrant further processing. Please review the accompanying letter for your options.

Sean Nelson
Civil Rights Specialist
515-281-4482 or 800-457-4416 ext. 1-4482

K. Keis
3342 Chimney Rock Rd
Iowa
52101

9/24/2012
PAC

Hon. Linda Reade
N.E. Iowa District Court
4200 C St. SW.
Cedar Rapids, Iowa
52404